UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD GRAY,                              Case No. 08-11915

        Petitioner,              Thomas L. Ludington
v.                                       United States District Judge

BLAINE LAFLER,                           Michael Hluchaniuk
                                         United States Magistrate Judge
        Respondent.
_____/

## REPORT AND RECOMMENDATION
## PETITION FOR RELIEF UNDER 28 U.S.C. § 2254 (Dkt. 1)

## I.    PROCEDURAL HISTORY

Petitioner Edward Gray filed the present action, *pro se*, on May 6, 2008,

pursuant to 28 U.S.C. § 2254. (Dkt. 1). On December 23, 2009, District Judge

Thomas L. Ludington found that the Michigan Court of Appeals' decision denying

petitioner post-judgment relief was "an unreasonable application of clearly

established Supreme Court precedent entitling Petitioner to habeas relief under 28

U.S.C. § 2254(d)(1)." (Dkt. 9, p. 11). The basis of Judge Ludington's

determination that the state court had erred was the state court's finding that the

trial judge had properly addressed petitioner's challenge, under *Batson v.*

*Kentucky*, 476 U.S. 79 (1986), to the jury selection process undertaken in

petitioner's trial.

Having found error on the part of the state court, Judge Ludington directed that an evidentiary hearing be conducted in this Court "limited to (1) Respondent providing race-neutral reasons for exercising the four peremptory challenges at issue; (2) Petitioner's opportunity to establish that the reasons are pre-textual; and (3) rulings on the prosecutor's credibility, pretext, and whether Petitioner carried the burden of persuasion on the ultimate issue of purposeful discrimination. (Dkt. 9, p. 14). The case was referred to the undersigned for the purpose of conducting an evidentiary hearing and filing a report and recommendation on whether petitioner's claim warranted habeas relief. (Dkt. 19). Pursuant to notice, an evidentiary hearing was conducted on April 21, 2010. (Dkt. 15). The parties filed supplemental briefs, after the transcript of the evidentiary hearing was filed. (Dkt. 22, 23). This matter is now ready for report and recommendation.

After consideration, the undersigned **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED**, for the reasons stated below.

## II.    FACTUAL BACKGROUND

Petitioner was convicted of first degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)c), kidnapping, § 750.349, and unlawfully driving away a motor vehicle, § 750.413, in Genesee County Circuit Court. The jury verdict was returned on November 17, 2005. The trial had begun on November 8, 2005, with jury selection. The prosecution was represented by Assistant Genesee County

Prosecutor Kennan DeWitt and petitioner was represented by attorney Jonathan E. Holt.

A.    Jury Selection On November 8, 2005

Fourteen jurors were to be selected for the trial.  Among the first 14 people selected from the venire in Judge Neithercut's courtroom were Juanita Kumaraswamy (Seat 5), Darlene Schuman (Seat 6), and Celia Fobbs (Seat 8).  (Tr. 11/8/05, pp. 34-35).  During the voir dire questioning conducted by Judge Neithercut, he asked the prospective jurors if any of them had been victims of criminal conduct and, if they had been, whether that experience would affect their judgment.  (Tr., 11/8/05, pp. 45, 47).  One unidentified female juror stated she did not "care ... to be on this jury" and that "it would bring back an emotional part of [her] life that [she] choose not to go to."  (Tr., 11/8/05, p. 48).  A second unidentified female juror, apparently in response to the same questions by Judge Neithercut, stated that a brother of one of her best friends "supposedly hung himself in jail ... but we didn't believe everything they said."  She also stated she "wouldn't be a fair juror for that."  *Id.*  The judge then asked a follow-up question and one of the two women said she "just [did not] think, emotionally, [she] could handle it."  The other woman stated she "didn't think [she] would judge fairly ... because of the issue and the situation of what happened."  She additionally stated she was "suspicious" of the "system."  (Tr., 11/8/05, p. 49).

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

The judge went on to other questions and the questions prompted a response from prospective juror Thomas Alvon (Seat 1), which caused the judge to excuse him for cause and replace him with Floyd Simpkins. (Tr., 11/8/05, p. 54). The judge later excused the prospective jurors for a break and addressed the attorneys outside of the presence of those prospective jurors. The judge informed the attorneys that he was personally acquainted with some of the witnesses and then stated there was "two jurors there that we may be removing for cause, [the] lady in seat number five who's got emotional problems, and then there's the woman in seat number eight who's got emotional problems." (Tr., 11/8/05, p. 63). At that time, Juanita Kumaraswamy was in Seat 5 and Celia Fobbs was in Seat 8. The judge suggested that he could "get rid of them now" or allow the attorneys to attempt a rehabilitation of them. The prosecutor, Mr. DeWitt, did not object to removing them at that point, but the defense attorney, Mr. Holt, objected to removing them for cause. The judge then responded that the women "both said that ... they have emotional experiences that would affect their good judgment here," but allowed Mr. Holt to ask additional questions and "perhaps they'll convince the Court [to allow the jurors] to remain." (Tr., 11/8/05, p. 64).

After the break, Mr. DeWitt was allowed to pose voir dire questions directly to the prospective jurors. At some point, he addressed Floyd Simpkins and asked him if did "supervisory things" and Simpkins responded "yeah." DeWitt then

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

rephrased the same question asking "I mean, you're a supervisor, right?" This time

Simpkins answered "no" and acknowledged he was a "janitor." (Tr., 11/8/05, p.

68). Mr. DeWitt asked another question of the prospective jurors relating to

attitudes towards law enforcement and one prospective juror said stated he or she

was "less favorably inclined" towards law enforcement because "of the outcome in

that case" and the feeling the law enforcement officers "didn't do their job." (Tr.,

11/8/05, pp. 70-71).

Mr. Holt later addressed the prospective jurors with his voir dire questions

and some of his questions prompted a juror, Celia Fobbs (Seat 8), to express

concern about being fair and the judge excused her for cause. (Tr., 11/8/05, pp. 83-

84).[1] The judge then asked the attorneys about "the other one ... [n]umber six."

Defense counsel asked for the opportunity to ask a few more questions and his

request was granted. *Id*. Ms. Fobbs was replaced by Shantilly Derden (Seat 8).

*Id*. Ms. Derden was asked some questions by the judge relating to people who had

"suffered from crime." (Tr., 11/8/05, 84-85). Her responses included a reference

---

[1] A video recording of the jury selection process was introduced into
evidence. For the most part, the video recording did little to supplement the
written transcript of the proceeding, in part, because the video did not show the
prospective jurors once they were seated in the jury box. However, the video did
show a woman responding from the seating area in the courtroom when Celia
Fobb's name was called and the woman responding was of apparent African-
American descent.

to her brother and the belief that he had been in the "wrong place" at the "wrong time."

Subsequently, the prosecutor was asked if he had challenges for cause and he sought to challenge Darlene Schuman for cause. (Tr., 11/8/05, p. 91). A discussion followed that included a side-bar conversation between the judge, the attorneys and Ms. Schuman in which Ms. Schuman revealed additional aspects of her personal background. Eventually the judge denied the challenge for cause and the prosecutor then exercised a peremptory challenge as to her. (Tr., 11/8/05, p. 94). The next peremptory challenge exercised by the prosecution was to Ms. Kumaraswamy (Seat 5). (Tr., 11/8/05, p. 107). After the defense exercised a peremptory challenge, the prosecution excused Mr. Simpkins by a peremptory challenge. (Tr., 11/8/05, p. 114). The attorneys traded peremptory challenges and then the prosecution excused Chantilly Derden (erroneously identified as Ms. Verdun in the transcript). (Tr., 11/8/05, p. 131).

Additional peremptory challenges were exercised by the attorneys after which Mr. Holt, at a side-bar, stated that he wanted to make an argument and "place the prosecutor on notice he's excused three blacks." (Tr., 11/8/05, p. 151). The judge indicated that the defense had "preserved" the issue but said he would consider arguments later due to other matters that he felt obligated to address. (Tr., 11/8/05, p. 152).

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

After a prospective juror was excused by the defense, James Shelton was seated in Seat 13. (Tr., 11/8/05, 159). The prosecutor questioned Mr. Shelton about his relationship with a Pastor Shelton. Mr. Shelton said he was "very close" to Pastor Shelton but was not sure if they were related by blood. *Id.* Mr. DeWitt asked a few additional questions of Mr. Shelton and Mr. Shelton seemed somewhat confused by the questions based on his response. (Tr., 11/8/05, pp. 160-64). The prosecutor then excused Mr. Shelton on a peremptory challenge. (Tr., 11/8/05, p. 166). The prosecution exercised one more peremptory challenge that day which ended with a jury being selected for the trial but without consideration of the defense's objection to the prosecution's conduct related to the jury selection. (Tr., 11/8/05, pp. 175, 182).

B.     Proceedings on November 9, 2005

At the beginning of the case, on November 9, 2005, Judge Neithercut invited the defense attorney to "renew" his motion under *Batson*. (Tr., 11/9/05, p. 3). Defense counsel alleged that four prospective jurors were peremptorily challenged on the basis of race. The individuals were identified by defense counsel as "juror D-1-22, Juanita K-u-—- I can't pronounce her last name, a female black juror, juror B-0-6-3, Floyd Simpkins, a male black, J-3-46 a female black, Shanita Barron, and B-0-6-1, King James Shelton." *Id.* In responding to the motion, the prosecutor said that he thought one of the African American females had been

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

excused for cause, that "there [were] non-discriminatory reasons [for the peremptory challenges]" and that "[r]ace did not enter into [the decision to excuse those prospective jurors]." (Tr., 11/9/05, pp. 3-4). The prosecutor went on to say that juror in Seat 1 "did not appear to be following what I was saying. He didn't appear to be attentive to the questions. I was concerned about the way he completed the – uh – jury questionnaire." As to the second African American man the prosecutor stated "he didn't seem to understand the questions that were asked of him at all in voir dire, and I felt that in a DNA case – uh –his limited understanding would preclude him from – uh – listening carefully and being able [sic] evaluate – uh – and possibly accept DNA evidence in the case where identity is the issue." The prosecutor also pointed out that three African American jurors remained on the jury. *Id.* In making his findings related to the *Batson* challenge, the judge stated that "three African American people" were on the jury." (Tr., 8/9/05, p. 5). As Judge Ludington has determined, the state judge did not apply the proper standard for evaluating a *Batson* challenge but he did find, on the record, that three African-American jurors remained on the jury. As of the conclusion of jury selection process the prosecution had exercised nine of the 12 peremptory challenges available. (Tr., 11/8/05, pp. 94, 107, 114, 124, 131, 142, 154, 166, and 176).

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

C.    Evidentiary Hearing on April 21, 2010

Pursuant to Judge Ludington's order of reference, a hearing was conducted

on April 21, 2010, for the purpose of "reconstructing" the basis of the

prosecution's decision to exercise a peremptory challenge as to each of the

venirepersons.  The only witness who testified at the hearing was Kennan DeWitt,

the former Assistant Genesee County Prosecutor who conducted the trial in this

matter on behalf of the prosecution.

Mr. DeWitt acknowledged that he had exercised peremptory challenges as to

four African-American venirepersons during the trial.  (Tr., 4/21/10, p. 27).  Mr.

DeWitt testified that Floyd Simpkins was one of those venirepersons and Mr.

DeWitt had excused him because of the inconsistency between his juror

questionnaire and his statements in court relating to his employment and the belief

on Mr. DeWitt's part that Mr. Simpkins had not been paying attention during voir

dire.  (Tr., 4/21/10, pp. 27-30).  The inconsistency related to the statement in the

jury questionnaire, as recalled by Mr. DeWitt, that Mr. Simpkins was a

"supervisor," as compared to his statement during voir dire where he said he was a

janitor and had no supervisory duties.[2]  *Id.*  The lack of attention on the part of Mr.

Simpkins during voir dire, that Mr. DeWitt testified he observed, was particularly

---

[2] The juror questionnaires were not available for the evidentiary hearing
because, according to the affidavit that was admitted by stipulation during the
hearing as Joint Exhibit No. 1, the questionnaires are destroyed after three years.

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

significant because the trial involved DNA evidence and DeWitt felt jurors would need to pay attention during the trial.  *Id.*

With respect to James Shelton, Mr. DeWitt testified that he was concerned because of his relationship to a Pastor Shelton, who Mr. DeWitt knew to be "very defense oriented," and Mr. DeWitt felt that James Shelton would share those values.  Mr. DeWitt felt that James Shelton, who worked with young people, would be sympathetic with people charged with criminal conduct and, given his spiritual nature, he might find it hard to pass judgment on someone.  (Tr., 4/21/10, pp. 30-32).

Shantilly Derden was also an African-American venireperson who was excused by the prosecution.[3]  (Tr., 4/21/10, p. 35).  Mr. DeWitt testified that he excused Ms. Derden because she had stated during voir dire that her brother had been the victim of a crime and that he had been in the "wrong place" at the "wrong time."  That comment, according to Mr. DeWitt, suggested she was not sympathetic to her own brother's circumstances and, therefore, she possibly would not be sympathetic to the victim in the trial.  Mr. DeWitt did not want a potentially unsympathetic juror on the trial jury.  (Tr., 4/21/10, pp. 32-36).

---

[3] Ms. Derden was apparently erroneously referred to as "Shanita Barron" by defense counsel during his *Batson* objection on the second day of the trial.  (Tr., 11/9/05, p. 3).

## III. ANALYSIS AND CONCLUSION

### A.  <u>Legal Standards</u>

Petitioner's present claim relates to the allegation that the prosecutor in his state court trial improperly used peremptory challenges to exclude African-American jurors in violation of the Equal Protection Clause based on the standards of *Batson v. Kentucky*, 476 U.S. 79 (1986).  Normally, for a claimant to show a violation of the *Batson* requirements, he must first establish a *prima facie* case of racial discrimination.  If the *prima facie* case of racial discrimination is established, the party exercising the peremptory challenge must proffer a race-neutral explanation for the peremptory challenge.  The race-neutral explanation does not have to be "'particularly persuasive, or even plausible, as long as it is neutral.'" Once the race-neutral explanation is offered, the party claiming the *Batson* violation must demonstrate that the offered explanation is merely a pretext for a racial motivation.  *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001).

In the present case, the first requirement of *Batson*, the *prima facie* showing, is moot because the state trial judge did not address that point and went directly to the prosecutor's race-neutral reasons for peremptorily challenging these four African-American venirepersons.  *Hernandez v. New York*, 500 U.S. 352, 359 (1991); (Dkt. 9, p. 10).  Judge Ludington referred this matter to the undersigned for

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

the limited purpose of considering any race-neutral reasons for the prosecution's peremptory challenges of the four identified African-American venirepersons and, if there were such race-neutral reasons proffered, whether petitioner can demonstrate that the reasons are pretext for purposeful discrimination. (Dkt. 9, p. 14). Petitioner must establish intentional discrimination by a preponderance of the evidence. *United States v. Hill*, 146 F.3d 337, 341 (6th Cir. 1998).

B.    Race-Neutral Reasons

Respondent offered explanations for exercising peremptory challenges as to the four individuals in controversy.

Floyd Simpkins

Mr. DeWitt recalled exercising a peremptory challenge as to Mr. Simpkins and explained that he was concerned about Mr. Simpkins because (1) he stated in his jury questionnaire that he was employed as a supervisor but in court admitted that he was not a supervisor and was actually employed as a janitor; and (2) he appeared to be inattentive during voir dire and the lack of attentiveness was particularly important to Mr. DeWitt in a case, like the one at hand, that involved DNA evidence. (Tr., 4/21/10, pp. 27-30).

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

## James Shelton

James Shelton was excused by the prosecution on a peremptory challenge. Mr. DeWitt explained that Mr. Shelton, who referred to himself as King James at times, was closely associated with an individual in the community named Pastor Shelton who Mr. DeWitt knew to be actively involved with defense causes and who Mr. DeWitt felt might have a bias against the government. Additionally, James Shelton worked with students and Mr. DeWitt felt he might be sympathetic to young people and therefore more forgiving of conduct that might be attributed to the defendant at the trial. Mr. DeWitt also considered James Shelton to be a "spiritual" person who might have trouble judging another person. (Tr., 4/21/10, pp. 30-32).

## Shantilly Derden

Mr. DeWitt testified that Ms. Derden was excused because in response to a question regarding victims of crimes, Ms. Derden stated that her brother was a victim of a crime and generally characterized the circumstances as her brother being in the "wrong place" at the "wrong time." (Tr., 4/21/10, p. 35). This "emotionless response" caused Mr. DeWitt to suspect that Ms. Derden would be unsympathetic to the victim in the trial and he did not want a juror who might be unsympathetic to a victim. (Tr., 4/21/10, p. 36).

Juanita Kumaraswaney

With respect to Ms. Kumaraswaney, referred to as "Juanita K." during portions of the state court trial and the federal court evidentiary hearing, Mr. DeWitt believed she had "emotional problems" that related to an experience where the brother of a friend hung himself in jail and she was not satisfied that the state authorities had done a proper job of investigating the circumstances and was "suspicious" of the criminal justice system. (Tr., 4/21/10, pp. 37-40). The emotional problems and her suspicion of the criminal justice system made her an unacceptable juror for Mr. DeWitt. *Id.*

The second step of the *Batson* analysis requires the party exercising the peremptory challenge to proffer a race-neutral reason for the challenge. The proffered explanation need not be "particularly persuasive" or "plausible" as long as it is race-neutral. *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001). Subjective factors such as "body language" or "demeanor" are permissible. *Id.* Unless the discriminatory intent is inherent in the explanation proffered, the reasons given will be deemed race-neutral and facially valid. *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003). The reasons proffered at the second step must be "reasons" and "not merely a denial of discriminatory motive or an affirmation of good faith." *Hardcastle v. Horn*, 368 F.3d 246, 258 (3d Cir. 2004).

A review of the reasons proffered by respondent, through the testimony of Mr. DeWitt, for the peremptory challenges as to all four of these individuals results in the conclusion that the reasons are facially valid, race-neutral explanations for the challenges.

## C.     Discriminatory Intent

The third step in the *Batson* analysis requires the opponent of the strike to prove "purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995). In conducting this final step in the analysis, the court should not "perfunctorily accept" the facially valid race-neutral explanation. *McCurdy*, 240 F.3d at 521-22. The more subjective in nature the race-neutral explanation is, the more thorough the analysis should be in order to "explicitly adjudicate" the credibility of the explanation. *Id*. The court has the responsibility to assess the prosecutor's credibility under "all the circumstances." *Roberts v. Galen of Virginia*, 325 F3d 776, 780 (6th Cir. 2003). However, the court is allowed to "presume" facially valid reasons are true and must require that discriminatory purpose or intent be affirmatively shown by the opponent of the strike. *Lancaster*, 324 F.3d at 433.

Petitioner attacks the credibility of Mr. DeWitt based on general and specific factors. The general factors include: (1) his failure to recall specifics of the case three weeks prior to the hearing; (2) he "erroneously" claimed that at least one

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

African-American juror had been excused by cause; (3) he was confused about the significance of *Batson* at the time of the trial and at the time of the evidentiary hearing; and (4) he was confused about the reasons he excused the individuals that are the focus of this matter. (Dkt. 23, p. 2). During the cross-examination of Mr. DeWitt, petitioner's counsel asked about a contact with a private investigator for the defense approximately three weeks before the trial. Mr. DeWitt acknowledged that he asked the investigator to "jog" his memory about the case at the time of the contact with the investigator. However, Mr. DeWitt said after that contact he did "jog" his memory by looking at the trial transcript and reviewing the video recording of the trial and, after doing that, he "remembered quite a bit about the facts" of the case. (Tr., 4/21/10, pp. 51-52). The undersigned finds that Mr. DeWitt's inability to recall facts of a trial that took place approximately four and a half years before the hearing, without refreshing his memory by reviewing a trial transcript and a video recording of the trial, does not have a significant negative effect on his credibility. That length of time would have some impact on anyone's ability to recall facts and his testimony during the hearing suggested some normal uncertainty about the facts of the trial but also a fairly good recollection about major issues under consideration.

Petitioner also argues that Mr. DeWitt "erroneously" claimed that an African-American juror was excused for cause. However, a review of both the

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

transcript and the video recording indicates that venireperson Celia Fobbs was an

African-American and was excused for cause during jury selection. Ms. Fobbs

was selected in the initial draw of jurors and took Seat 8. (Tr., 11/8/05, p. 36,

video Exhibit 2A, 11/8/05, 12:05:16 PM). The woman responding to the name

Celia Fobbs appeared to be of African-American descent as shown in the video

recording of the trial that was introduced into evidence.[4] Ms. Fobbs was excused

for cause because she stated she did not think she could be fair. (Tr., 11/8/05, pp.

83-84). When the *Batson* issue was argued on the second day of trial, Mr. DeWitt

contended that he thought one or more of the African-American jurors that defense

counsel had identified had been excused for cause. (Tr., 11/9/05, p. 3). While that

was not accurate in the sense that none of the identified veniepersons had been

excused for cause, at least one African-American female juror had been excused

for cause. Mr. DeWitt's confusion over that issue is more indicative of haste rather

than intentional misrepresentation and, in the view of the undersigned, does not

significantly impact his credibility.

 Mr. DeWitt clearly did not fully understand the *Batson* issue, either at the

time of the trial in 2005, or at the time of the evidentiary hearing in 2010. (Tr.,

---

[4] Exhibits 2A, 2B and 2C were DVD recordings from the early proceedings
in the trial. They were offered into evidence at the evidentiary hearing, but not
played in court during the hearing. The undersigned viewed the exhibits after the
hearing, as suggested by both counsel, and at that time made the observation
regarding Ms. Fobbs.

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

4/21/10, pp. 68-69). However, he clearly understood at the time of the evidentiary hearing in 2010 that one of the issues that needed to be addressed was the reason for exercising a peremptory challenge against a member of a minority group. *Id.* In the view of the undersigned, Mr. DeWitt's confusion about *Batson* did not affect his credibility as to the reasons he exercised a peremptory challenge.

Petitioner also challenges Mr. DeWitt's credibility as to the specific reasons he gave for exercising peremptory challenges against the four identified African-American venirepersons. With respect to Shantilly Derden, petitioner states that Mr. DeWitt "could point to nothing in her answers to voir dire questions which caused him concern." (Dkt. 23, p. 5). However, Mr. DeWitt clearly stated that her comment regarding her brother being in the "wrong place [at the] wrong time" reflected someone who might be unsympathetic to a victim of a crime and he was concerned about that. (Tr., 4/21/10, pp. 32-36). That response by Ms. Derden was given by her after the judge asked if she herself or someone "close" to her had "suffered from crime." (Tr., 11/8/05, p.85). A part of her response is not reflected in the transcript, but when her response is considered in the context of the questions asked by the judge, it is reasonable to conclude, consistent with Mr. DeWitt's statement, that Ms. Derden was characterizing her brother as a victim of crime and Mr. DeWitt thought her "emotionless" response showed a lack of sympathy. Mr. DeWitt's reason for excusing Ms. Derden is race-neutral and is

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

based on something reflected in the court record.  While everyone may not reach the same conclusion as Mr. DeWitt on such a statement, his conclusion is rationally based.  Petitioner argues that the explanation is inadequate citing *Turner v Marshall*, 121 F.3d 1248, 1253 (9th Cir. 1997) in support of his argument. However, *Turner* is clearly distinguishable from the present case in that the *Turner* court found the prosecutor's explanation to be pretextual where a minority venireperson was excused for a stated reason and a non-minority venireperson, with the same circumstances, was not excused.  No showing has been made that Ms. Derden's circumstances were substantially similar to those of a non-minority venireperson who was not excused by the prosecutor through a peremptory challenge.  Petitioner has not met his burden of showing that the reason stated for excusing Ms. Derden was a pretext for racial discrimination.

Regarding Juanita Kumaraswaney, petitioner asserts that Mr. DeWitt's stated reason for excusing her should not be credited because it appeared to be "afterthought."  (Dkt. 23, p. 5).  Ms. Kumaraswaney was seated in seat 5 when initially selected.  (Tr. 11/8/05, pp. 35-36).  Shortly after she was selected, the judge asked a question about whether any of the prospective jurors had "suffered from a crime."  (Tr., 11/8/05, p. 45).  Unfortunately, the record does not identify the names of the prospective jurors who responded to that question but several of the jurors did respond.  Two of the prospective jurors who responded in some

fashion were females. One of them stated that being a juror could bring back a part of her life she did not want to "revisit" while the second one stated that one of her best friend's son had hung himself and, as a result of that, she did not think she could be a fair juror because she was "suspicious" of the system. (Tr., 11/8/05, pp. 48-49). Later, the judge said two of the jurors seemed to have emotional problems and he suggested they be removed for cause. One of those two jurors was identified as being in seat 5, which was Ms. Kumaraswaney at the time. (Tr., 11/8/05, p. 63-64). Neither of those jurors was excused for cause because defense counsel objected and asked for the opportunity to ask additional questions. *Id.*

Later in the voir dire process, Mr. DeWitt was asking questions regarding the graphic nature of some of the photographs he expected to use in the trial and he addressed an unidentified juror and stated "I know you had some concerns about how that particular case turned out." (Tr., 11/8/05, p. 66). The juror stated she had wanted the other matter to go to trial to obtain a "sense of justice ... for someone who [she] thought had been wronged." (Tr., 11/8/05, p. 67). Mr. DeWitt stated that he, after reviewing the transcript and watching and listening to the DVD of the trial, was convinced that Ms. Kumaraswaney was the prospective juror who described the incident about the brother of a friend who had hung himself and her resulting concern about being a fair juror because she was "suspicious" of the system and did not think her friend's brother had been treated fairly. (Tr., 11/8/05,

pp. 39-41).  Mr. DeWitt stated these comments by Ms. Kumaraswaney indicated a

"strong bias" on her part against the prosecution and that was why he excused her

with a peremptory challenge.  *Id*.  Petitioner argues that Mr. DeWitt should not be

believed due to his inability, at the time of the state trial, to recall if a female

African-American juror had been excused for cause.  As indicated earlier, an

African-American female had been excused for cause and therefore Mr. DeWitt's

confusion on the morning of the second day of trial is understandable.  Petitioner

has not presented any evidence indicating the statements Mr. DeWitt attributes to

Ms. Kumaraswaney were not made by her.  Had Mr. DeWitt not have been able to

review the transcript as well as see and listen to the DVD of the trial, his testimony

identifying the juror making these statements as Ms. Kumaraswaney would have

been harder to accept, but he was able to do that and it is not unreasonable for him

to make such an identification.  The undersigned concludes, based on the evidence

in this record, that Ms. Kumaraswaney made the statements as identified by Mr.

DeWitt and that the statements do show a possible bias against the prosecution as

contended by Mr. DeWitt.  Nothing argued or presented by petitioner is persuasive

as to Mr. DeWitt's lack of credibility and, therefore, it is determined that petitioner

has not met his burden of proof to demonstrate racial discrimination as to the

prosecution's reason for excusing Ms. Kumaraswaney.

With respect to Mr. Shelton, petitioner incorrectly contends that Mr. DeWitt "could not point to the reason he excused Shelton" and that he relied only on "nonverbal" factors. (Dkt. 23, p. 5). However, Mr. DeWitt actually gave several reasons for excusing Mr. Shelton. Mr. DeWitt testified about Mr. Shelton on two occasions during the evidentiary hearing. Mr. DeWitt said he was concerned about Mr. Shelton because of his relationship with Pastor Shelton who was "very defense oriented" and biased against the prosecution. Mr. DeWitt felt that Mr. Shelton would be sympathetic to criminal defendants and "defense oriented" as well. Further, Mr. DeWitt stated Mr. Shelton was a "spiritual" person who may have trouble judging other people. (Tr., 4/21/10, pp. 31-33). Mr. DeWitt repeated these reasons later in his testimony and also stated that Mr. Shelton did not "appear to understand certain questions." Mr. DeWitt gave an example of what he perceived as Mr. Shelton's confusion and then added that he thought his perception "had to do with non-verbals and [Mr. Shelton's] level of understanding and his response to questions generally." (Tr., 4/21/10, pp. 85-88). The reasons given by Mr. DeWitt are, for the most part, based on information in the court record and petitioner has not presented evidence or argument justifying the conclusion that Mr. DeWitt's testimony should not be believed. Petitioner has not met his burden of proof that the reasons proffered were pretext for racial discrimination.

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

The last challenged venireperson is Floyd Simpkins. Petitioner's argument regarding Mr. Simpkins does not reference any specific issues and seems to rely on the general claim that any reason given was merely an "after the fact explanation." (Dkt. 23, p. 6). Mr. Simpkins, who was initially seated in seat 1, was specifically discussed at the time of the *Batson* challenge in state court. At that time, Mr. DeWitt stated that a juror "did not appear to be following what I was saying, ...[h]e didn't appear to be attentive to the questions ...[and Mr. DeWitt] was concerned about the way he completed the ... jury questionnaire." (Tr., 11/9/05, p. 4). When defense counsel asked for clarification as to the juror Mr. DeWitt was talking about, the judge recognized the juror as "juror number one" and Mr. DeWitt confirmed that. *Id.* At the time of the evidentiary hearing, Mr. DeWitt elaborated on those reasons, stating that the juror questionnaire indicated that Mr. Simpkins was a "supervisor," but during voir dire Mr. Simpkins stated he was not a supervisor. Mr. DeWitt also stated Mr. Simpkins was not following what Mr. DeWitt was saying and he appeared inattentive. Being attentive was particularly important in this case, according to Mr. DeWitt, because of the use of DNA evidence in the prosecution's case. (Tr., 4/21/10, pp. 27-30). These reasons are race-neutral and petitioner has not shown that Mr. DeWitt should not be believed. Petitioner has not met his burden of proving pretext for racial discrimination.

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler;* 08-11915

In the third step of the *Batson* analysis, the court clearly must make credibility findings as to the prosecutor's proffered reasons for excusing an African-American juror. *Roberts*, 325 F.3d at 780. That finding should be based on all the pertinent circumstances. *Id.* The undersigned finds that the testimony of Mr. DeWitt during the April 21, 2010 evidentiary hearing generally appeared credible based on his demeanor during the testimony, his consistency with the other more objective evidence in the case (which consisted of the transcript and video recording of relevant portions of the trial) and an assessment of any motive to fabricate he might have. Additionally, the fact that three African-Americans remained on the selected jury would weigh against finding purposeful discrimination in the exercise of peremptory challenges against African-American jurors. It is clear that the presence of an African-American on the jury does not preclude, under a *Batson* analysis, a determination that the prosecutor employed racial discrimination as to another African-American venireperson. *Torres-Ramos*, 536 F.3d at 588. However, it is also clear that the existence of African-Americans on the jury along with unused peremptory challenges for the prosecution weighs against a finding of discrimination. *Lancaster*, 324 F.3d at 434; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); and *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1522 (6th Cir. 1988).

Report and Recommendation
Petition for Relief Under 28 U.S.C. § 2254
*Gray v. Lafler*;08-11915

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **DENY** the petition for relief under 28 U.S.C. § 2254.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 20, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on December 20, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Laura A. Cook and Joan E. Morgan.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov