UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD GRAY,

        Petitioner,

                                Case Number 08-11915
                                Honorable Thomas L. Ludington
v.

BLAINE LAFLER,

        Respondent.
_____/

**ORDER OVERRULING PETITIONER'S OBJECTIONS, ADOPTING MAGISTRATE JUDGE HLUCHANIUK'S REPORT AND RECOMMENDATION, DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner Edward Gray ("Petitioner") filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 6, 2008 [Dkt. #1]. On December 23, 2009, this Court found that the Michigan Court of Appeals's decision denying Petitioner post-judgment relief was "an unreasonable application of clearly established Supreme Court precedent entitling Petitioner to habeas relief under 28 U.S.C. § 2254(d)(1)." [Dkt. #9 at 11]. The Court reasoned that the state court had erred when it found that the trial judge had properly addressed Petitioner's challenge to the jury selection process undertaken in his trial pursuant to *Batson v. Kentucky*, 476 U.S. 29 (1986). This Court ordered that an evidentiary hearing be conducted, limited to "(1) Respondent providing race-neutral reasons for exercising the four peremptory challenges at issue; (2) Petitioner's opportunity to establish that the reasons are pre-textual; and (3) rulings on the prosecutor's credibility, pretext, and whether Petitioner carried the burden of persuasion on the ultimate issue of purposeful discrimination." [Dkt. #9 at 14]. The case was then referred to Judge Hluchaniuk to conduct the evidentiary hearing and file a report and recommendation. [Dkt. #19].

Judge Hluchaniuk conducted the hearing on April 21, 2010, and the parties filed supplemental briefs after the hearing transcript was filed. Judge Hluchaniuk completed his report and recommendation on December 20, 2010 [Dkt. #66]. Judge Hluchaniuk concluded that Petitioner's writ of habeas corpus should be denied because the reasons provided by the prosecutor, Kennan DeWitt ("DeWitt") for the four peremptory challenges are facially valid, race-neutral explanations for the challenges and, accordingly, that Petitioner has not met his burden of proving pretext for purposeful racial discrimination in the exercise of peremptory challenges against African-American jurors. On January 3, 2011, Petitioner filed an objection [Dkt. #26] to Judge Hluchaniuk's report and recommendation.

This Court agrees that the prosecutor's reasons for his exercise of the four peremptory challenges are facially valid, race-neutral explanations. Petitioner has not met his burden of proving pretext for purposeful racial discrimination in the exercise of the four peremptory challenges at issue. Accordingly, the Court will overrule Petitioner's objections, adopt Judge Hluchaniuk's report and recommendation, and deny Petitioner's writ of habeas corpus.

**I**

Petitioner was convicted of first degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)c), kidnapping, Mich. Comp. Laws § 750.349, and unlawfully driving away a motor vehicle, Mich. Comp. Laws § 750.413, in Genesee County Circuit Court. The trial began with jury selection on November 8, 2005, and the jury's verdict was returned on November 17, 2005. The prosecution was represented by Assistant Genesee County Prosecutor Kennan DeWitt and petitioner was represented by attorney Jonathan E. Holt.

**November 8, 2005 Jury Selection**

Fourteen jurors were to be selected for the trial. Among the first 14 people selected from the venire were Juanita Kumaraswamy (Seat 5), Darlene Schuman (Seat 6), and Celia Fobbs (Seat 8). Trial Tr. vol. 1, 34-35, Nov. 8, 2005. During the voir dire questioning conducted by Judge Neithercut, he asked the prospective jurors if any of them had been victims of criminal conduct and, if they had been, whether that experience would affect their judgment. Trial Tr. vol. 1, 45, 47. One unidentified female juror stated she did not "care . . . to be on this jury" and that "it would bring back an emotional part of [her] life that [she] choose not to go to." Trial Tr. vol. 1, 48. A second unidentified female juror, apparently in response to the same questions by Judge Neithercut, stated that a brother of one of her best friends "supposedly hung himself in jail . . . but we didn't believe everything they said." She also stated she "wouldn't be a fair juror for that." *Id.* The judge then asked a follow-up question and one of the two women said she "just [did not] think, emotionally, [she] could handle it." The other woman stated she "didn't think [she] would judge fairly . . . because of the issue and the situation of what happened." She additionally stated she was "suspicious" of the "system." Trial Tr. vol. 1, 49.

Judge Neithercut proceeded with his questions, which prompted a response from prospective juror Thomas Alvon (Seat 1) that he could not presume the defendant to be innocent even if he were instructed to do so. This caused Judge Neithercut to excuse Alvon for cause and replace him with Floyd Simpkins. Trial Tr. vol. 1, 54. The judge later excused the prospective jurors for a break and addressed the attorneys outside of the presence of the prospective jurors. The judge informed the attorneys that he was personally acquainted with some of the witnesses and then stated there were "two jurors there that we may be removing for cause, [the] lady in seat number five who's got emotional problems, and then there's the woman in seat number eight who's got emotional

problems." Trial Tr. vol. 1, 63. At that time, Juanita Kumaraswamy was in Seat 5 and Celia Fobbs was in Seat 8. The judge suggested that he could "get rid of them now" or allow the attorneys to attempt to rehabilitate them. DeWitt did not object to removing them at that point but Holt objected to removing them for cause. The judge responded that the women "both said that . . . they have emotional experiences that would affect their good judgment here," but allowed Holt to ask additional questions and "perhaps they'll convince the Court [to allow the jurors] to remain." Trial Tr. vol. 1, 64.

After the break, DeWitt was allowed to pose voir dire questions directly to the prospective jurors. At some point, he addressed Floyd Simpkins and asked him if did "supervisory things" and Simpkins responded "yeah." DeWitt then rephrased the same question asking "I mean, you're a supervisor, right?" This time Simpkins answered "no" and acknowledged he was a "janitor." Trial Tr. vol. 1, 68. DeWitt asked another question of the prospective jurors relating to attitudes towards law enforcement and one prospective juror stated he or she was "less favorably inclined" towards law enforcement because "of the outcome in [a] case" where he had felt that the law enforcement officers "didn't do their job." Trial Tr. vol. 1, 70-71.

Holt later addressed the prospective jurors with his voir dire questions and some of his questions prompted a juror, Celia Fobbs (Seat 8), to express concern about her ability to be fair and the judge excused her for cause. Trial Tr. vol. 1, 83-84. The judge then asked the attorneys about juror number six. Defense counsel asked for the opportunity to ask a few more questions and his request was granted. *Id.* Celia Fobbs was replaced by Shantilly Derden (Seat 8). *Id.* Ms. Derden was asked some questions by the judge relating to people who had "suffered from crime." Trial Tr. vol. 1, 84-85. Her responses included a reference to her brother and the belief that he had been in the

"wrong place" at the "wrong time."

Subsequently, Judge Neithercut asked DeWitt if he had challenges for cause. DeWitt challenged Darlene Schuman for cause. Trial Tr. vol. 1, 91. A discussion followed that included a side-bar conversation between the judge, the attorneys and Ms. Schuman in which Ms. Schuman revealed additional aspects of her personal background. Eventually the judge denied the challenge for cause and the prosecutor then exercised a peremptory challenge as to her. Trial Tr. vol. 1, 94. The next peremptory challenge exercised by the prosecution was to Ms. Kumaraswamy (Seat 5). Trial Tr. vol. 1, 107. After the defense exercised a peremptory challenge, the prosecution excused Mr. Simpkins by a peremptory challenge. Trial Tr. vol. 1, 114. The attorneys traded peremptory challenges and then the prosecution excused Chantilly Derden who was erroneously identified as Ms. Verdun in the transcript. Trial Tr. vol. 1, 131.

Additional peremptory challenges were exercised by the attorneys after which Holt, at a side-bar, stated that he wanted to make an argument and "place the prosecutor on notice he's excused three blacks." Trial Tr. vol. 1, 151. The judge indicated that the defense had "preserved" the issue but said he would consider arguments later due to other matters that he felt obligated to address. Trial Tr. vol. 1, 152. After a prospective juror was excused by the defense, James Shelton was seated in Seat 13. Trial Tr. vol. 1, 159. The prosecutor questioned Mr. Shelton about his relationship with a Pastor Shelton. Mr. Shelton said he was "very close" to Pastor Shelton but was not sure if they were related by blood. *Id.* Mr. Shelton's responses indicated that he was confused by some of DeWitt's additional questions. Trial Tr. vol. 1, 160-64. The prosecutor then excused Mr. Shelton on a peremptory challenge. Trial Tr. vol. 1, 166. The prosecution exercised one more peremptory challenge. A jury was selected that same day for the trial but without consideration of

the defense's objection to the prosecution's conduct related to the jury selection. Trial Tr. vol. 1, 182. At the conclusion of jury selection, the prosecution had exercised nine of its twelve peremptory challenges. Trial Tr. vol. 1, 94, 107, 114, 124, 131, 142, 154, 166, 176.

### November 9, 2005 Proceedings

At the beginning of the case on November 9, 2005, Judge Neithercut invited the defense attorney to "renew" his motion under *Batson*. Trial Tr. vol. 2, 3, Nov. 9, 2005. Defense counsel alleged that four prospective jurors were peremptorily challenged on the basis of race. The individuals were identified by defense counsel as "juror D-1-22, Juanita K-u-—- I can't pronounce her last name, a female black juror, juror B-0-6-3, Floyd Simpkins, a male black, J-3-46 a female black, Shanita Barron, and B-0-6-1, King James Shelton." *Id.* In responding to the motion, the prosecutor said that he thought one of the African American females had been excused for cause, that "there [were] non-discriminatory reasons [for the peremptory challenges]" and that "[r]ace did not enter into [the decision to excuse those prospective jurors]." Trial Tr. vol. 2, 3-4. DeWitt went on to say that juror in Seat 1 "did not appear to be following what I was saying. He didn't appear to be attentive to the questions. I was concerned about the way he completed the – uh – jury questionnaire." As to the second African American male DeWitt stated "he didn't seem to understand the questions that were asked of him at all in voir dire, and I felt that in a DNA case – uh –his limited understanding would preclude him from – uh – listening carefully and being able [sic] evaluate – uh – and possibly accept DNA evidence in the case where identity is the issue." The prosecutor also pointed out that three African American jurors remained on the jury. *Id.* In making his findings related to the *Batson* challenge, the judge stated that "three African American people" were on the jury." Trial Tr. vol. 2, 5.

**April 21, 2010 Evidentiary Hearing**

A hearing was conducted on April 21, 2010, pursuant to the Court's order, to reconstruct the basis of the prosecution's decision to exercise a peremptory challenge as to each of the four African American venirepersons. The only witness who testified at the hearing was DeWitt, who acknowledged that he had exercised peremptory challenges as to four African-American venirepersons during the trial. Evidentiary Hr'g Tr., 27, Apr. 21, 2010. DeWitt testified that Floyd Simpkins was one of those venirepersons at issue and that DeWitt had excused him because of the inconsistency between his juror questionnaire and his statements in court relating to his employment. This led DeWitt to believe that Simpkins had not been paying attention during voir dire. Evidentiary Hr'g Tr., 27. DeWitt recalled that the inconsistency was that Simpkins stated he was a "supervisor" in his juror questionnaire, but stated during voir dire that he was a janitor with no supervisory duties. *Id.* DeWitt testified he was concerned about Simpkins's inattention because the trial involved DNA evidence and DeWitt felt jurors would need to pay attention during the trial. *Id.*

With respect to James Shelton, DeWitt testified that he was concerned because of his relationship to Pastor Shelton, who DeWitt knew to be "very defense oriented." DeWitt believed that James Shelton would share those values. DeWitt was also concerned that James Shelton, who worked with young people, would be sympathetic with people charged with criminal conduct and, given his spiritual nature, he might find it hard to pass judgment on someone. Evidentiary Hr'g Tr., 30-32.

Shantilly Derden was also an African-American venireperson who was excused by the prosecution. Evidentiary Hr'g Tr., 35). DeWitt testified that he excused Ms. Derden because she had stated during voir dire that her brother had been the victim of a crime and that he had been in the "wrong place" at the "wrong time." DeWitt construed that comment as suggesting she was not

sympathetic to her own brother's circumstances and, therefore, she possibly would not be sympathetic to the victim in the trial. DeWitt did not want a potentially unsympathetic juror on the trial jury. Evidentiary Hr'g Tr., 32-36.

After the April 21, 2010 evidentiary hearing, Judge Hluchaniuk granted the parties' joint request to file supplemental pleadings. Respondent and Petitioner filed supplemental briefs prior to Judge Hluchaniuk issuing his report and recommendation regarding Petitioner's petition for habeas corpus. Petitioner filed a timely objection to the report and recommendation on January 3, 2010. Respondent did not file an objection.

## II

Petitioner has made three objections to the magistrate judge's report and recommendation. Each will be discussed separately below.

### A

Petitioner's first objection is that DeWitt, the sole witness before Judge Hluchaniuk at the evidentiary hearing, was not credible and that his proffered explanations for the peremptory challenges should not be believed. Petitioner contends that his attempts to show that the proffered explanations were not credible were rejected even though DeWitt admitted that he had no recollection of the case several weeks before the evidentiary hearing, and he admitted that his memory at the time of the trial was better than it was at the evidentiary hearing. Petitioner also emphasizes that, at trial, DeWitt did not remember which jurors he exercised peremptory challenges against or challenged for cause. Despite DeWitt's limited memory, Judge Hluchaniuk found that these factors did not have a "significant negative effect" on DeWitt's credibility. Judge Hluchaniuk also excused DeWitt's misunderstanding of *Batson*. Petitioner generally objects to Judge

Hluchaniuk's findings and conclusions that DeWitt's explanations were credible and race neutral.

Petitioner's objection consists of arguments previously presented in his supplemental brief [Dkt. #23] and is not sufficient "to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). An objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in the context of Federal Rule of Civil Procedure 72. *Id.* at 747. Petitioner's objection does not address Judge Hluchaniuk's well-reasoned disposition of the issue and does not identify any error in his legal analyses in error but instead offers Petitioner's general disagreement with Judge Hluchaniuk's conclusions. *See id.* at 747-48. ("A general objection to the magistrate's report has the same effect as a failure to object."). Petitioner thus has not proffered sufficient evidence from which the Court must conclude, as a matter of law, that DeWitt's proffered explanations for the peremptory challenges were incredible. Accordingly, Petitioner's first objection is overruled.

**B**

Petitioner's second objection is to Judge Hluchaniuk's conclusion that DeWitt's proffered explanations for the four peremptory challenges at issue were race neutral. Petitioner's objection reviews the testimony DeWitt offered at the evidentiary hearing and contends that DeWitt's testimony was insufficient and unconvincing. Petitioner's second objection similarly consists of arguments previously presented and is likewise not sufficient "to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich*, 327 F. Supp. 2d at 743. Petitioner thus has not adequately set forth a discrete objection to the Judge Hluchaniuk's conclusion that DeWitt's explanations of the peremptory challenges were facially valid and race-neutral.

Moreover, the Court agrees with Judge Hluchaniuk that DeWitt has offered facially valid, race-neutral explanations for the peremptory challenges. As noted in Judge Hluchaniuk's report and recommendation, the proffered race-neutral explanations do not have to be " 'particularly persuasive, or even plausible, as long as it is neutral.' " [Dkt. #25 at 11 (*citing McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001)]. The testimony DeWitt provided meets this requirement. Accordingly, Petitioner's second objection will be overruled.

**C**

Petitioner's final objection is that DeWitt's race-neutral explanations for the four peremptory challenges are pretextual. Petitioner contends that DeWitt's numbers "speak for themselves" because he excused four out of seven prospective African American jurors but excused a lower percentage of white jurors, that DeWitt's "after the fact" explanations of the peremptory challenges are insufficient, and that the presence of three African Americans on the selected jury does not mitigate against a finding of discrimination. Petitioner does not provide any evidence of the percentage of white jurors who were excused or explain the statistical relevance of such a comparison.

As noted in Judge Hluchaniuk's report and recommendation, the presence of an African-American on the jury, standing alone, does not preclude a determination that the prosecutor employed racial discrimination as to another African-American venireperson, but the existence of African-Americans on the jury along with unused peremptory challenges for the prosecution weighs against a finding of discrimination. *Lancaster v. Adams*, 324 F.3d 423, 588 (6th Cir. 2003). The Court agrees with Judge Hluchaniuk's conclusions that DeWitt's testimony is consistent with the objective evidence of the case provided through the trial transcripts and video evidence, and that the presence of three African-Americans on the jury coupled with unused peremptory challenges weigh

in favor of finding that DeWitt's race-neutral explanations were not pretextual. Petitioner's third objection will thus be overruled.

**D**

Defendant may appeal this Court's decision to deny petition of habeas corpus only if he receives a certificate of appealability. 28 U.S.C. § 2253(c)(2). A certificate of appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* A habeas petitioner makes a "substantial showing of the denial of a constitutional right" when he demonstrates that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, reasonable jurists would not debate the Court's conclusions with regard to the merits of Defendant's claims. As a result, he is not entitled to a certificate of appealability.

**VI**

Accordingly, it is **ORDERED** that Petitioner's objections are **OVERRULED**.

It is further **ORDERED** that Judge Hluchaniuk's Report and Recommendation [Dkt. #25] is **ADOPTED**.

It is further **ORDERED** that Petitioner's petition for habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 18, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 18, 2011.

                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS